# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH
### NO. 02-10-00368-CV


IN THE MATTER OF B.S., A CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant B.S. appeals the judgment modifying his prior disposition and the order committing him to the Texas Youth Commission (TYC). We will affirm.

In February 2010, B.S. was adjudged delinquent for unauthorized use of a motor vehicle, a felony, and placed on probation for one year. One of the terms of B.S.'s probation ordered him to "attend and successfully complete counseling for Drug/Mental Issues" at North Texas State Hospital in Vernon (the Hospital). In April 2010, the State filed a motion to modify disposition, alleging that B.S. had violated his probation "by being unsuccessfully discharged from his court ordered

---

[1]See Tex. R. App. P. 47.4.

placement on March 26, 2010 from the North Texas State Hospital in Vernon, Texas." The trial court conducted several hearings on the State's motion, found that B.S. had violated his probation, revoked B.S.'s probation, and ordered B.S. committed to the TYC for an indeterminate period not to exceed his nineteenth birthday.

In his only point, B.S. argues that the trial court abused its discretion by modifying his disposition and committing him to the TYC because the State did not prove that he had been ordered to successfully complete a treatment program at the Hospital, that the disposition being modified was based on felonious conduct, and that he violated a "reasonable" order of the court.

A trial court's modification of disposition is governed by family code section 54.05. Tex. Fam. Code Ann. § 54.05 (West 2008). When a juvenile's prior disposition is based on a finding that the juvenile engaged in a felony offense, the trial court may modify the disposition and commit the juvenile to the TYC if the court finds by a preponderance of the evidence that the juvenile violated a reasonable and lawful order of the court. *Id.* § 54.05(f). Juvenile courts are vested with a great amount of discretion in determining the suitable disposition of children found to have engaged in delinquent conduct, and this is especially so in hearings to modify disposition. *In re D.R.A.*, 47 S.W.3d 813, 815 (Tex. App.— Fort Worth 2001, no pet.). Consequently, we review an order committing a juvenile to the TYC under an abuse of discretion standard. *In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004). A trial court abuses its discretion when it acts

2

arbitrarily or unreasonably or without reference to guiding rules or principles. *In re D.R.*, 193 S.W.3d 924, 924 (Tex. App.—Dallas 2006, no pet.).

Carnelius Carey testified at the hearing on the State's motion to modify disposition that he is a placement probation officer for Tarrant County Juvenile Probation; that he transported B.S. to the Hospital on February 25, 2010; that he received reports from the Hospital that B.S. "was having some problems controlling his anger, aggression, and being non-compliant with staff directions"; and that he was notified that B.S. was going to be unsuccessfully discharged from the hospital on or about March 26, 2010.

John Hamby testified at the hearing that he is a social worker at the Hospital; that he worked with B.S. on a daily basis during B.S.'s placement at the Hospital; and that B.S. acted out, cursed, yelled at staff, kicked doors open, and threatened staff and other patients at the Hospital. Hamby said that B.S. showed improvement every day but that he was also involved in some type of "negative" incident at least once per day. Hamby explained that it is the Hospital's policy to discharge a patient when the patient commits an "intolerable infraction," that B.S. was aware of the policy, and that B.S. committed such an "intolerable infraction" when he assaulted a staff member. Hamby testified as follows about the incident:

> Q. Are you aware of whether or not it was him being the aggressor and trying to hit staff or if he was trying to get away from staff and the staff was hit? Do you recall the circumstances regarding that?

3

Q. A. According to the staff, [B.S.] was wanting to speak with me, I believe, at the time, and he went back to my office. I was not there, but the office was open, and he went in the office and sat down. The staff asked him to leave and he did not so they were escorting him out of the office, and that's at the point where he hit the staff.

Q. Okay. Are you aware if he was just trying to get away from them or if he actually went forward and attacked the staff?

A. No, I don't think he went forward and attacked them, because they -- I think they put their hands on him to escort him out at the time, so they would have been in close contact at that point.

According to Hamby, it was B.S.'s actions that caused him to be unsuccessfully discharged from the Hospital.

Dr. Enrique Del Campo testified at the hearing that he is a psychiatrist at the adolescent unit of the Hospital, that B.S. was much more disruptive than the average patient, and that he made the decision to discharge B.S. Regarding the assault on the staff member, Dr. Del Campo testified that B.S. "actually punched one of the staff members in the face three times."

Based on the foregoing evidence, we hold that the trial court could have reasonably concluded that the State proved by a preponderance of the evidence that B.S. was unsuccessfully discharged from his placement at the Hospital on March 26, 2010.

Without citing any authority, B.S. argues that the State did not prove that he was ordered to successfully complete a treatment program at the Hospital nor that the disposition being modified was based on felonious conduct because the

4

State did not "offer any court order as an exhibit," "request the trial court to take judicial notice of a prior court order," or "present evidence of this during the hearing on the merits of its modification motion." Appellate courts reviewing the modification of a juvenile's disposition have looked to adult revocation cases for guidance in determining the appropriate procedures in juvenile cases. *In re J.A.D.*, 31 S.W.3d 668, 670 (Tex. App.—Waco 2000, no pet.). In an adult revocation proceeding, "formal proof of the terms of the probation are not necessary" and the "State [does not have to] prove the conviction and the terms of probation" "as long as the judgment and order of probation appear in the record on appeal." *Cobb v. State*, 851 S.W.2d 871, 873–74 (Tex. Crim. App. 1993) ("[T]he nature of the continuing jurisdiction makes the proof of the documents, which is an extension of the sentencing power of the trial court, unnecessary."). In this case, the judgment of delinquency, order of probation with placement, and terms of B.S.'s probation are all included in the record.[2] Accordingly, we hold that the trial court did not abuse its discretion by revoking B.S.'s probation in the absence of the State's introducing these documents into evidence.

B.S. also argues that the trial court abused its discretion by revoking his probation and sentencing him to the TYC because the State failed to establish

---

[2]Notwithstanding this, the trial court observed that B.S. was on probation for a felony offense and that he was ordered to successfully complete counseling at the Hospital.

5

that he violated a "reasonable" order of the court, considering that the "hospital psychiatrist discharged [him] before sufficient time had passed to allow . . . [him] to stabilize on needed medications" and that "the lack of appropriate education services obviously aggravated the situation." *See* Tex. Fam. Code Ann. § 54.05(f) (requiring violation of reasonable and lawful court order). B.S. relies on *In re D.E.P.*, 512 S.W.2d 789, 792 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ), a case in which the appellate court held that the trial court had abused its discretion by concluding that the child had violated a reasonable order of the court because a change in the child's circumstances, which was beyond the child's control, made the trial court's order unreasonable. As later recognized by the same appellate court, however, "[t]he conditions which caused the violations in the *D.E.P.* case were out of the control of the child involved." *In re Rodriguez*, 687 S.W.2d 421, 422–23 (Tex. App.—Houston [14th Dist.] 1985, no writ). Here, the trial court could have reasonably concluded that it was not beyond B.S.'s control to refrain from cursing at staff, yelling at staff, kicking doors, threatening staff and other patients, and committing an "intolerable infraction" by assaulting a member of the staff, notwithstanding that he was prescribed medication for the first time on March 5, 2010, and that he did not attend special education classes.

We hold that the trial court did not abuse its discretion by granting the State's motion to modify disposition and committing B.S. to the TYC. Accordingly, we overrule B.S.'s sole point and affirm the trial court's judgment and order.

BILL MEIER
JUSTICE

PANEL:  WALKER, MCCOY, and MEIER, JJ.

DELIVERED:  July 28, 2011